**Joseph G. Sansone**
**Co-Chief, Market Abuse Unit**
**Simona K. Suh**
**Joshua R. Geller**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, NY 10281**
**(212) 336-9101 (Geller)**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **No. 17 Civ. ____** |
| **-against-** | **COMPLAINT** |
| **FEI YAN,** | **JURY TRIAL DEMANDED** |
| **Defendant,** | |
| **-and-** | |
| **RONGXIA WU,** | |
| **Relief Defendant.** | |

---

Plaintiff Securities and Exchange Commission ("Commission") files this Complaint against Defendant Fei Yan ("Yan") and Relief Defendant Rongxia Wu ("Wu") and alleges as follows:

### SUMMARY

1.     This case involves insider trading by Fei Yan ("Yan"), an engineering research scientist, who, between June and December of 2016, generated illegal profits of approximately $120,000 by trading stocks and options in advance of two corporate merger announcements:  the

acquisition of Mattress Firm Holding Corp. ("Mattress Firm") by Steinhoff International

Holdings N.V. ("Steinhoff"), through a tender offer announced on August 7, 2016, and the

acquisition of Stillwater Mining Company ("Stillwater") by Sibanye Gold Limited ("Sibanye"),

announced on December 9, 2016.

2.      Yan obtained material nonpublic information about the two mergers from his wife

("Attorney A"), a junior corporate associate at the New York offices of an international law firm

("Law Firm A").  Attorney A was a member of the Law Firm A teams that represented the

acquiring corporations in the two transactions and, during the relevant times, was in daily contact

with Yan, either by phone or in person.

3.      On June 4, 2016, approximately two months after Attorney A joined the

Steinhoff-Mattress Firm deal team at Law Firm A, and eight days after Steinhoff delivered a

confidential non-binding letter offering to acquire Mattress Firm, Yan submitted an application

to open a brokerage account in the name of his mother Wu, a citizen and resident of China.

4.      In the following weeks, as the Steinhoff-Mattress Firm negotiations continued,

Yan funded the newly-opened brokerage account (the "Wu Account") from his own bank

account, and then proceeded to purchase 300 shares of Mattress Firm stock in the Wu Account.

The Mattress Firm tender offer was announced on Sunday, August 7, 2016.  On August 8, 2016,

the first trading day following the announcement, Yan sold his entire Mattress Firm position,

profiting by over $9,700.

5.      Later that same year, on November 22, 2016, approximately three months after

Attorney A joined the Sibanye-Stillwater deal team at Law Firm A, and eight days after Law

Firm A delivered a confidential draft of the Sibanye-Stillwater merger agreement to Stillwater's

counsel, Yan began purchasing Stillwater call options, again using the Wu Account.  Yan bought

additional Stillwater call options during the following 16 days, purchasing a total of 766

contracts in advance of the December 9, 2016 pre-market-open acquisition announcement.

6.      In the final days before the announcement, as Yan was purchasing his Stillwater

options, he also conducted internet searches for the phrases "how sec detect unusual trade" and

"insider trading with international account" and accessed articles about the Commission's

detection and enforcement efforts in the insider trading area.

7.      Yan sold his Stillwater option contracts on the announcement date, profiting by

over $109,700.

8.      Yan purchased Mattress Firm stock and Stillwater options while in possession of,

and on the basis of, material nonpublic information about Steinhoff's acquisition of Mattress

Firm and Sibanye's acquisition of Stillwater.

9.      With respect to the Mattress Firm tender offer, Yan purchased Mattress Firm

stock when he knew or had reason to know that the information he had relating to the tender

offer was nonpublic and acquired directly or indirectly from an advisor to the offering company

or the target.

## VIOLATIONS

10.      By virtue of the conduct alleged herein, Yan violated Sections 10(b) and 14(e) of

the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b), 78n(e)] and

Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.14e-3].

11.      Unless Yan is permanently restrained and enjoined, he will again engage in the

acts, practices and courses of business set forth in this Complaint and in acts, practices and

courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12.     The Commission brings this action under the authority conferred upon it by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].  The Commission seeks a final judgment (1) permanently enjoining Yan from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint; (2) requiring Yan to disgorge all ill-gotten gains from the unlawful insider trading alleged in this Complaint, together with prejudgment interest, on a joint and several basis with Wu; and (3) ordering Yan to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to Sections 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u-1, 78aa].

14.     Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York.  For example, Attorney A obtained the material nonpublic information concerning the Mattress Firm and Stillwater transactions in the course of her work in the New York offices of Law Firm A, located within this District.  During relevant times, Attorney A routinely spoke with Yan by phone from this District.  On at least one occasion in November 2016, shortly before Yan began purchasing Stillwater call options, Attorney A and Yan met in person in this District.  Yan engaged in insider trading in the securities of companies whose common stocks are listed on the New York Stock Exchange and the NASDAQ Global Select Market, which are both headquartered within this District.

## DEFENDANT

15.     **Yan**, a citizen of China, is 31 years old and, during the events alleged herein, resided in Cambridge, Massachusetts.  Yan is married to Attorney A.  During the relevant time, Yan was an engineering postdoctoral associate at an academic institution in Massachusetts.

## RELIEF DEFENDANT

16.     **Wu**, age 58, is a citizen and resident of China.  She is the mother of Yan.  Yan conducted the insider trading alleged herein in a brokerage account that he opened in Wu's name.

## RELEVANT ENTITIES

17.     During the relevant time, **Mattress Firm** was a Delaware corporation headquartered in Houston, Texas, engaged in the retail sale of mattresses.  On August 7, 2016, Steinhoff and Mattress Firm announced that Steinhoff would acquire Mattress Firm for approximately $2.4 billion through a tender offer.  Prior to that acquisition, which closed on September 16, 2016, Mattress Firm's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was listed on the NASDAQ Global Select Market (ticker symbol: MFRM).

18.     During the relevant time, **Stillwater** was a Delaware corporation headquartered in Littleton, Colorado, engaged in the palladium and platinum mining business.  On December 9, 2016, Stillwater announced that it had entered into an agreement with Sibanye under which Sibanye would acquire Stillwater for approximately $2.2 billion.  Prior to the acquisition, which closed on May 4, 2017, Stillwater's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was listed on the New York Stock Exchange (ticker symbol: SWC).

## FACTS

A.  **Yan's Trading in Mattress Firm Stock Before the Steinhoff Acquisition Announcement**

19.     Steinhoff and Mattress Firm began discussing a potential business combination in July 2015.  In early October 2015, Steinhoff, with assistance from its counsel Law Firm A, negotiated and executed a nondisclosure and standstill agreement with Mattress Firm and its counsel.  In or about early March 2016, Attorney A became aware of the Steinhoff-Mattress Firm merger negotiations through her work as an associate at Law Firm A.

20.     In April and May 2016, representatives of Steinhoff and Mattress Firm had multiple communications concerning the valuation of the potential transaction.

21.     On May 27, 2016, Steinhoff sent a confidential acquisition offer letter to Mattress Firm.

22.     Eight days later, on June 4, 2016, Yan applied to open the Wu Account.  The application purported to be from Wu and included what purported to be her signature, but the email address listed on the application was Yan's.  Yan funded the Wu Account with transfers from his own bank account in the United States, and he controlled all the securities trading in the Wu Account.

23.     The Steinhoff-Mattress Firm negotiations continued in June 2016.  On June 16, the companies executed an exclusivity agreement, which had been negotiated by Law Firm A and Mattress Firm's counsel in the preceding days.

24.     On June 24, 2016, Yan purchased 100 shares of Mattress Firm stock at $33.35 per share in the Wu Account.  Yan and Attorney A spoke by phone nearly every day, and often several times a day, between early March and June 24, 2016, including four times on June 24 before Yan placed his purchase order for Mattress Firm stock.

25.    On June 25, 2016, Attorney A traveled from to New York to China, and Yan joined her there on July 12, 2016.  Yan and Attorney A's wedding celebration took place during this trip to China.

26.    On July 25, 2016, while overseas, Yan purchased an additional 70 shares of Mattress Firm stock at $30.20 per share in the Wu Account.

27.    The next day, July 26, 2016, Yan purchased an additional 130 shares of Mattress Firm stock at $30.15 per share in the Wu Account.

28.    Yan purchased Mattress Firm stock between June 24 and July 26, 2016, while in possession of, and on the basis of, material nonpublic information about Steinhoff's acquisition of Mattress Firm that he had obtained from Attorney A.

29.    Yan also purchased Mattress Firm stock with knowledge or reason to know that the information he had relating to the Steinhoff tender offer for Mattress Firm was nonpublic, and that it was acquired directly or indirectly from an advisor to the offering company or the target.

30.    On Sunday, August 7, 2016, at 12:01 a.m., Mattress Firm and Steinhoff announced that Steinhoff would acquire Mattress Firm for $64 per share.  When the market opened on August 8, Mattress Firm's stock price increased by $33.95, and it closed that day at $63.75 per share, a 114% increase from the closing price on the previous trading day.  The trading volume in Mattress Firm stock increased by 8,112,189 shares to 8,293,144 shares, a 4,483% increase compared to the trading volume on the previous trading day.

31.    At 11:22 a.m. on August 8, 2016, Yan sold all 300 shares of the Mattress Firm stock that he had purchased in June and July at $63.65 per share, for a profit of approximately $9,726, or $32.42 per share.

**B.**     **Yan's Trading in Stillwater Options Before the Sibanye Acquisition Announcement**

32.     Sibanye initially expressed its interest in acquiring Stillwater in March 2016, and in July 2016, Sibanye submitted a preliminary non-binding indication of interest to acquire Stillwater.  In or about late August 2016, Attorney A learned of Sibanye's negotiations with Stillwater through her position as an associate at Law Firm A, which was representing Sibanye in the negotiations.

33.     On September 12, 2016, Yan completed an application to trade options in the Wu Account.

34.     In October 2016, Sibanye continued to negotiate a possible acquisition of Stillwater and Stillwater's financial advisor also contacted several other potential transaction counterparties, all of which ultimately decided not to pursue a transaction with Stillwater.

35.     In November 2016, the negotiations between Stillwater and Sibanye were at an advanced stage, and Attorney A was working on the Sibanye-Stillwater matter almost every business day, except during a vacation in Europe that she took in late November, as alleged below.

36.     Between November 4 and 6, 2016, Yan visited Attorney A in New York.

37.     On November 7, 2016, upon returning to Cambridge, Yan visited the Yahoo! Finance page concerning Stillwater.  Over the next few days, Yan and Attorney A spoke on the phone multiple times each day, as was typical for them.

38.     On November 12, 2016, Yan flew from Boston to Germany.  The next day, November 13, before information about the Stillwater-Sibanye transaction was publicly available, Yan searched the internet for "stillwater merger" but did not locate any web pages on this subject matter.

39.     The next day, November 14, 2016, Law Firm A delivered a draft merger agreement to Stillwater's counsel.

40.     On or about November 22, 2016, Attorney A also flew to Europe.

41.     On November 22, 2016, Yan used the Wu Account to purchase 21 Stillwater call options with a strike price of $15 at $0.85 per share, as well as 50 Stillwater call options with a strike price of $16 at $0.38 per share.[1]  All of these options were due to expire on December 16, 2016.

42.     On November 23, 2016, Yan purchased an additional 200 Stillwater call options with a strike price of $15 and an expiration date of December 16, 2016 in the Wu Account.

43.     On November 28, 2016, Yan returned to Cambridge, and Attorney A returned to New York.  Attorney A resumed her work on the Sibanye-Stillwater transaction the next day, and she continued to work on it every business day between then and the announcement of the deal on December 9, 2016.  As was typical for them, Yan and Attorney A spoke by phone daily, and sometimes multiple times per day, between their return to the United States on November 28 and the announcement of the Sibanye-Stillwater transaction on December 9.

44.     On December 1, 2016, Yan purchased an additional 100 Stillwater call options with a strike price of $16 and an expiration date of December 16, 2016 in the Wu Account, at $0.20 per share.  On the same day, representatives of Sibanye, Stillwater, and their respective legal counsel and financial advisors convened in New York to discuss the key terms of the transaction.

---

[1]     Each call option is, in substance, a contract that gives the option's owner the right to buy 100 shares of the underlying stock at a set price per share, known as the option's strike price, on or before a set future date, known as the option's expiration date.   For example, Yan's purchase of 21 Stillwater call options with a strike price of $15 and an expiration date of December 16, 2016 gave Yan the right to buy 2,100 shares of Stillwater stock for $15 per share on or before December 16, 2016.

45.    On December 6, 2016, Yan used the Wu Account to purchase 164 Stillwater call options with a strike price of $15 at $0.35 per share, and 177 Stillwater call options with a strike price of $16 at $0.10 per share.  These options were all set to expire on December 16, 2016, only ten days away.

46.    Later that same day, Yan conducted a Google search for the search string "how sec detect unusual trade" and visited several web pages concerning the Commission's detection and enforcement efforts with respect to insider trading.

47.    On December 7, 2016, Yan conducted a Google search for the search string "insider trading with international account" and accessed articles discussing the Commission's insider trading enforcement actions with international dimensions.

48.    On December 8, 2016, Yan purchased 54 Stillwater call options with a strike price of $15 and an expiration date of January 20, 2017 at $0.75 per share in the Wu Account.

49.    By the end of the day on December 8, 2016, Yan had accumulated 695 Stillwater call options in the Wu Account with strike prices of $15 and $16 per share and expiration dates of December 16, 2016 or January 20, 2017. [2] Yan purchased these Stillwater call options while in possession of, and on the basis of, material nonpublic information about Sibanye's acquisition of Stillwater that he had obtained from Attorney A.

50.    On December 9, 2016, at approximately 1:04 a.m., Stillwater and Sibanye publicly announced that Stillwater had entered into an agreement with Sibanye under which Sibanye would acquire Stillwater for $18.00 per share in cash.  Yan accessed the press release

---

[2]    During November and December 2016, Yan purchased a total of 766 Stillwater call options, but he sold 71 of these contracts, with a strike price of $15 and an expiration date of December 16, 2016, for a profit of approximately $935 on December 5, 2016.

online at 5:30 a.m. that day.  He then visited the NASDAQ and Yahoo! Finance pages

concerning Stillwater between 5:30 a.m. and 6:09 a.m.

51.     At 9:33 a.m., just after the open of regular market trading, Yan began placing

orders to sell his Stillwater call options.  In the wake of the acquisition announcement,

Stillwater's stock price increased by $2.64 per share to $17.32 (approximately an 18% increase

compared to the previous trading day's closing price), and the volume increased by 34,644,993

shares to 37,801,686 shares (approximately a 1,097% increase compared to the previous trading

day).  Over the course of the day, Yan sold his entire Stillwater options position, generating

illegal profits of approximately $109,702.

**C.     Yan Traded on the Basis of Misappropriated Material Nonpublic Information, With
        Scienter**

52.     At all relevant times, Yan owed a duty of trust or confidence to Attorney A, as her

husband and/or because Yan and Attorney A had a history, pattern, and practice of sharing

confidences.

53.     At all relevant times, Law Firm A's policies required that its employees, including

Attorney A, maintain the confidentiality of client-related information and not use this

information to trade in securities, or disclose it to others to trade on it.  Attorney A was also

required to maintain the confidentiality of client-related information under the professional

conduct standards applicable to her as an attorney.

54.     Yan purchased Mattress Firm stock in June and July of 2016 and Stillwater call

options in November and December of 2016, as alleged herein, while in possession of, and on

the basis of, material nonpublic information about Steinhoff's acquisition of Mattress Firm and

Sibanye's acquisition of Stillwater.  Yan knew or was reckless in not knowing that the

information was material and nonpublic.

11

55.     Yan obtained the material nonpublic information about the two acquisitions from Attorney A, and intentionally or recklessly traded on the basis of this information in breach of Yan's duty of trust or confidence to Attorney A.

56.     In the alternative, Attorney A intentionally or recklessly tipped the information to Yan, in breach of her duty of trust or confidence to Law Firm A and its clients Steinhoff and Sibanye, and Yan intentionally or recklessly traded on the information, while knowing or with reason to know that the information was disclosed to him improperly.

## FIRST CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against Defendant Yan, as to Trading in Both Mattress Firm and Stillwater Securities)

57.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

58.     By virtue of the foregoing, Yan, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of a security, with scienter, used the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange to:  (1) employ devices, schemes, or artifices to defraud; (2) make untrue statements of a material fact or to omit to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon others.

59.     By virtue of the foregoing, Yan violated and, unless restrained and enjoined, will continue violating, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
### Violations of Section 14(e) of the Exchange Act and Rule 14e-3 Thereunder
### (Against Defendant Yan, as to Trading in Mattress Firm Securities)

60.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

61.     By virtue of the foregoing, after Steinhoff had taken a substantial step or steps to commence a tender offer for Mattress Firm, Yan purchased Mattress Firm stock (a) while in possession of material information relating to the tender offer, which information Yan knew or had reason to know was nonpublic, and which he knew or had reason to know had been acquired directly or indirectly from the offering person Steinhoff, the issuer of the securities to be sought by the tender offer Mattress Firm, or an officer, director, partner or employee or any other person acting on behalf of the offering person Steinhoff or the issuer Mattress Firm, and (b) before such information and its source were publicly disclosed by press release or otherwise.

62.     By virtue of the foregoing, Yan violated and, unless restrained and enjoined, will continue violating, Section 14(e) of the Exchange Act [15 U.S.C. § 78n(e)] and Rule 14e-3 thereunder [17 C.F.R. § 240.14e-3].

## THIRD CLAIM FOR RELIEF
### Relief Defendant Liability
### (Against Relief Defendant Wu)

63.     Paragraphs 1 through 56 are incorporated by reference as if fully set forth herein.

64.     As the nominal owner of the Wu Account, Relief Defendant Wu received ill-gotten gains from Yan's illegal trading in Mattress Firm and Stillwater securities alleged herein.

65.     Relief Defendant Wu has no legitimate claim to the ill-gotten gains from Yan's illegal trading.

66.     By virtue of the foregoing, Relief Defendant Wu should be required to disgorge such ill-gotten gains from Yan's illegal trading.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Yan and his agents, servants, employees and attorneys and all persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise from violating Sections 10(b) and 14(e) of the Exchange Act [15 U.S.C. §§ 78j(b), 78n(e)] and Rules 10b-5 and 14e-3 thereunder [17 C.F.R. §§ 240.10b-5, 240.14e-3].

### II.

Ordering Yan to disgorge all ill-gotten gains from the conduct alleged in this Complaint, with prejudgment interest, on a joint and several basis with Relief Defendant Wu to the extent that Wu received ill-gotten gains from the alleged conduct.

### III.

Ordering Relief Defendant Wu to disgorge all ill-gotten gains she received from the conduct alleged in this Complaint, with prejudgment interest, on a joint and several basis with Yan.

### IV.

Ordering Yan to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

## V.

Granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       July 12, 2017

                              Joseph G. Sansone
                              Simona K. Suh
                              Joshua R. Geller

                              SECURITIES AND EXCHANGE COMMISSION
                              New York Regional Office
                              Brookfield Place
                              200 Vesey Street, Suite 400
                              New York, New York 10281-1022
                              (212) 336-9101 (Geller)
                              gellerj@sec.gov